IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MURRAY ENERGY CORPORATION,**
**MURRAY AMERICAN ENERGY, INC.**,
**THE AMERICAN COAL COMPANY**,
**AMERICAN ENERGY CORPORATION**,
**THE HARRISON COUNTY COAL COMPANY**,
**KENAMERICAN RESOURCES, INC.**, **THE MARION COUNTY COAL COMPANY, THE MARSHALL COUNTY COAL COMPANY**,
**THE MONONGALIA COUNTY COAL COMPANY**, **OHIOAMERICAN ENERGY INC.**, **THE OHIO COUNTY COAL COMPANY**,
and **UTAHAMERICAN ENERGY, INC.**,

                Plaintiffs,

        v.                                        Civil Action No. 5:14-CV-39
                                                          Judge Bailey

**GINA McCARTHY**, Administrator,
United States Environmental Protection
Agency, in her official capacity,

                Defendant.

## ORDER DENYING MOTION

Pending before this Court is Defendant's Motion to Dismiss the Complaint and Motion to Strike Prayer for Injunctive Relief [Doc. 34]. In the Motion, the defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and, in the alternative, moves to strike paragraph (c) of the plaintiffs' prayer for relief, requesting injunctive relief, pursuant to Fed. R. Civ. P. 12(f). The Motion has been fully briefed and is ripe for decision.

1

This action centers around § 321(a) of the Clean Air Act, 42 U.S.C. § 7621(a). This statutory provision provides:

> The Administrator shall conduct continuing evaluations of potential loss or shifts of employment which may result from the administration or enforcement of the provision of [the Clean Air Act] and applicable implementation plans, including where appropriate, investigating threatened plant closures or reductions in employment allegedly resulting from such administration or enforcement.

42 U.S.C. § 7621(a) (brackets added).

In her Motion, the Administrator argues that this Court is without subject matter jurisdiction to hear this case because the plaintiffs have not articulated a sufficient statutory waiver of the Government's sovereign immunity. This, she contends, is because the statute upon which the plaintiffs rely is discretionary and § 321(a) does not contain a date certain for action by the Administrator.

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity. **United States v. Sherwood**, 312 U.S. 584, 586 (1941). All waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign.' **Lane v. Pena**, 518 U.S. 187, 192 (1996). For that reason, it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim. **Williams v. United States**, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff fails to meet this burden, then the claim must be dismissed. **Medina v. United States**, 259 F.3d 220, 223 (4th Cir. 2001)." **Welch v. United**

***States***, 409 F.3d 646, 650-51 (4th Cir. 2005).

In this case, the plaintiffs assert jurisdiction under § 304 of the Clean Air Act, 42 U.S.C. § 7604, which provides in pertinent part:

> Except as provided in subsection (b) of this section [notice requirements], any person may commence a civil action on his own behalf - -
>
> * * * * * *
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . .
>
> * * * * * *
>
> The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to order the Administrator to perform such act or duty, as the case may be. . ..

42 U.S.C. § 7604(a).

Accordingly, the "substantive issue in this case is one of statutory construction, specifically whether the [Clean Air Act] imposes a discretionary or non-discretionary duty on the EPA Administrator." ***Monongahela Power Co. v. Reilly***, 980 F.2d 276 (4th Cir. 1993).

There is some confusion as to the appropriate standard to be applied in a case such as this. The Fourth Circuit has indicated that the analysis should be conducted under Rule 12(b)(1):

> [W]e observe that rather than granting summary judgment pursuant to Rule

56(c), the district court should have dismissed the suit for want of jurisdiction under Rule 12(b)(1) if the United States is not liable for Williams' injury. *See* **Broussard v. United States**, 989 F.2d 171, 177 (5th Cir. 1993) (*per curiam*) (noting that the proper practice is to dismiss for want of jurisdiction for purposes of the FTCA under Rule 12(b)(1), not to grant summary judgment under Rule 56(c)); **Shirey v. United States**, 582 F.Supp. 1251, 1259 (D. S.C.1984) (explaining that if the court lacks subject matter jurisdiction, the suit must be dismissed). We find distinguishing between the various modes of liability to have procedural ramifications. The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1), *see* **Kehr Packages, Inc. v. Fidelcor, Inc.**, 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222 (1991), because "[t]he party who sues the United States bears the burden of pointing to ... an unequivocal waiver of immunity," **Holloman v. Watt**, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied,* 466 U.S. 958 (1984). In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings. *See* **Mortensen v. First Federal Sav. & Loan Ass'n,** 549 F.2d 884, 891 (3d Cir. 1977). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.; see also* **Richland–Lexington Airport Dist. v. Atlas Properties,** 854 F.Supp. 400, 407 (D. S.C. 1994) (cogently explaining the differences between dismissal procedure under Rule 12(b)(1) and summary judgment under Rule 56(c)). We exercise plenary review over issues raised

4

under Rule 12(b)(1). See **Black Hills Aviation, Inc. v. United States**, 34 F.3d 968, 972 (10th Cir. 1994). The differing procedural standards of dismissal under Rule 12(b)(1) and summary judgment under Rule 56(c) are more than academic; dismissal under Rule 12(b)(1) has two consequences: one, the court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning jurisdiction; and two, dismissal for jurisdictional defects has no *res judicata* effect. See 2A James W. Moore, *Moore's Federal Practice* ¶ 12.07, at 12–49 - 12–50 (2d ed.1994). The district court implicitly recognized these principles in opining that Williams and Meridian can litigate in state court.

**Williams v. United States**, 50 F.3d 299, 304 (4th Cir. 1995).

On the other hand, the District of Columbia Circuit has more recently held that the analysis should be conducted under Rule 12(b)(6):

Although we hold that we do not lose jurisdiction over this controversy by reason of mootness, this does not resolve the jurisdictional theory upon which the district court relied in dismissing the case under Rule 12(b)(1) for lack of subject matter jurisdiction. **Sierra Club**, 724 F.Supp.2d at 42–43. The district court's ruling was based on the proposition that the Administrator's decision was discretionary and therefore not justiciable. Before this court, Sierra Club, which certainly does not concede that the district court should have dismissed the claim at all, argues that the analysis should have been under Rule 12(b)(6) to determine whether the complaint

5

failed to state a claim upon which relief could be granted rather than under the jurisdictional standards of Rule 12(b)(1). While it does not in the end affect the outcome, we ultimately agree that Rule 12(b)(6) should govern. We hasten to state that we do not fault the district court for basing its dismissal on Rule 12(b)(1) rather than Rule 12(b)(6). The distinction between a claim that is not justiciable because relief cannot be granted upon it and a claim over which the court lacks subject matter jurisdiction is important. But we cannot fault the district court, as this court "ha[s] not always been consistent in maintaining these distinctions." *Oryszak v. Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009) (Ginsburg, J., concurring). Indeed, we have provided authority both that discretionary duty claims fall outside our jurisdiction, and that such claims are nonjusticiable under Rule 12(b)(6). In *Association of Irritated Residents v. EPA,* we held that agency decisions excluded from judicial review by 5 U.S.C. § 701(a)(2) are outside the court's jurisdiction. 494 F.3d 1027, 1030 (D.C. Cir. 2007) ("In this case, subject matter jurisdiction turns on whether the Agreement constitutes a rulemaking subject to APA review, or an enforcement proceeding initiated at the agency's discretion and not reviewable by this court."). Two years later, in *Oryszak v. Sullivan,* we came to a different conclusion. Without any reference to *Association of Irritated Residents,* we stated:

> Because the APA does not apply to agency action committed to agency discretion by law, a plaintiff who challenges such an

> action cannot state a claim under the APA. Therefore, the court has jurisdiction over his case pursuant to § 1331, but will properly grant a motion to dismiss the complaint for failure to state a claim. *Oryszak,* 576 F.3d at 525.

*Sierra Club v. Jackson*, 648 F.3d 848, 853-54 (D.C. Cir. 2011).

Inasmuch as this Court is a part of the Fourth Circuit, this Court will apply Rule 12(b)(1).

In determining whether this Court has jurisdiction, the EPA's position is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *Our Children's Earth Found. v. EPA*, 527 F.3d 842, 846 (9th Cir. 2008), citing *Fox Television Stations, Inc. v. FCC,* 280 F.3d 1027, 1038–39 (D.C. Cir. 2002) ("Nor is an agency's interpretation of a statutory provision defining the jurisdiction of the court entitled to our deference under *Chevron.*) (In turn citing *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 650 (1990)).

In determining whether the statute imposes a non-discretionary duty, this Court is mindful that "the term 'nondiscretionary' has been construed narrowly. *See Environmental Defense Fund* [*v. Thomas*], 870 F.2d [892] at 899 [(2d Cir.), *cert. denied*, 493 U.S. 991 (1989)] ('[T]he district court has jurisdiction under [section 7604] to compel the Administrator to perform purely ministerial acts. . ..'); *Sierra Club* [*v. Thomas*], 828 F.2d [783] at 791 [(D.C. Cir. 1987)] ('clear-cut nondiscretionary duty'); *Kennecott Copper Corp. v. Costle,* 572 F.2d 1349, 1355 (9th Cir. 1978) (citizen suit provision was intended to 'provide relief only in a narrowly-defined class of situations in which the Administrator

7

failed to perform a mandatory function' (quoting *Wisconsin's Envtl. Decade, Inc. v. Wisconsin Power & Light Co.,* 395 F.Supp. 313, 321 (W.D. Wis. 1975))); *Mountain States Legal Found. v. Costle,* 630 F.2d 754, 766 (10th Cir. 1980) ('specific non-discretionary clear-cut requirements'), *cert. denied,* 450 U.S. 1050 (1981)." *Monongahela Power Co. v. Reilly*, 980 F.2d 272, 276 n. 3 (4th Cir. 1992).

The first point of reference is, of course, the statute itself. "Although the line between a congressional mandate and an area of agency discretion is not difficult to state, ascertaining that line is not always as easy. When Congress specifies an obligation and uses the word 'shall,' this denomination usually connotes a mandatory command. *See Alabama v. Bozeman,* 533 U.S. 146, 153 (2001). On the other hand, '[a]bsent some provision requiring EPA to adopt one course of action over the other, we can only conclude that EPA's choice represented an exercise of discretion.' *Farmers Union Cent. Exch. v. Thomas,* 881 F.2d 757, 761 (9th Cir. 1989)." *Our Children's Earth Found. v. U.S.E.P.A.*, 527 F.3d 842, 847 (9th Cir. 2008).

"However, not every decision is so easily categorized. As the Supreme Court teaches, the decision-making process does not necessarily collapse into a single final decision. 'It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking.' *Bennett v. Spear,* 520 U.S. 154, 172 (1997). In *Bennett,* considering a citizen suit provision parallel to that in the CWA, the Supreme Court held, '[s]ince it is the omission of these *required* procedures that petitioners complain of, their ... claim is reviewable.' *Id*. at 172 (emphasis added)." *Id.*

Because this issue requires this Court to interpret language in a statute, the Court must follow the well-established canons of statutory interpretation. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.,* 540 U.S. 526, 534 (2004) (citations and internal quotation marks omitted). The statute in question, 42 U.S.C. § 7621, provides that the Administrator "shall conduct continuing evaluations . . .."

"The use of 'shall' creates a mandatory obligation on the actor . . . to perform the specified action. *See* **Allied Pilots Ass'n v. Pension Benefit Guar. Corp.,** 334 F.3d 93, 98 (D.C. Cir. 2003) (noting 'the well-recognized principle that the word "shall" is ordinarily the language of command') (citation and internal quotation marks omitted); **United States v. Ins. Co. of N. Am.,** 83 F.3d 1507, 1510 n. 5 (D.C. Cir. 1996) ('Cases are legion affirming the mandatory character of "shall."') (citing **United States v. Monsanto,** 491 U.S. 600, 607 (1989); **Griggs v. Provident Consumer Discount Co.,** 459 U.S. 56, 61 (1982) (per curiam); **Anderson v. Yungkau,** 329 U.S. 482, 485 (1947); **Ass'n of Civilian Technicians v. FLRA,** 22 F.3d 1150, 1153 (D.C. Cir. 1994)." **Swanson Group Mfg. LLC v. Salazar**, 951 F.Supp.2d 75, 81 (D. D.C. 2013).

In **Raymond Proffitt Found. v. EPA**, 930 F.Supp. 1088, 1097 (E.D. Pa. 1996), the Court stated "both the Supreme Court and the Third Circuit often have stated that the use of the word 'shall' in statutory language means that the relevant person or entity is under a mandatory duty. **United States v. Monsanto,** 491 U.S. 600, 607 (1989) (By using 'shall' in a civil forfeiture statute, 'Congress could not have chosen stronger words to express its

9

intent that forfeiture be mandatory in cases where the statute applied. . . .'); ***Pierce v. Underwood***, 487 U.S. 552, 569–70 (1988) (noting that Congress's use of 'shall' in a statute was 'mandatory language'); ***Barrentine v. Arkansas–Best Freight Sys., Inc.***, 450 U.S. 728, 739 n. 15 (1981) (same); ***United States v. Martinez–Zayas***, 857 F.2d 122, 128 (3d Cir. 1988) (stating that Congress clearly and unambiguously expressed its intent by stating that the court 'shall' impose a mandatory sentence and that this created a mandatory legal duty to impose the sentence); ***United States v. Troup***, 821 F.2d 194, 198 (3d Cir. 1987) (stating that Congress's use of the word 'shall' was 'mandatory'); see also ***United States ex rel. Senk v. Brierley***, 471 F.2d 657, 659–60 (3d Cir. 1973).

The Fourth Circuit also construes "shall" as expressing a mandatory duty. "As the Supreme Court remarked in a related context, 'Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied.' ***United States v. Monsanto***, 491 U.S. 600, 607 (1989). 'The word "shall" does not convey discretion. It is not a leeway word, but a word of command.' ***United States v. Fleet***, 498 F.3d 1225, 1229 (11th Cir. 2007) (internal quotation marks omitted). The plain text of the statute thus indicates that forfeiture is not a discretionary element of sentencing. Instead, § 2461 mandates that forfeiture be imposed when the relevant prerequisites are satisfied, as they are here. ***United States v. Newman***, 659 F.3d 1235, 1240 (9th Cir. 2011); see also ***United States v. Torres***, 703 F.3d 194, 204 (2d Cir. 2012)." ***United States v. Blackman***, 746 F.3d 137, 143 (4th Cir. 2014). See ***In re Rowe***, 750 F.3d 392, 396-397 (4th Cir. 2014) and ***Air Line Pilots Assoc., International v. US Airways Group, Inc.***, 609 F.3d 338, 342 (4th Cir. 2010).

10

The legislative history of § 321(a) supports the mandatory nature of the provision. As the House Interstate and Foreign Commerce Committee reported: "Under this provision, the Administrator *is mandated to undertake* an ongoing evaluation of job losses and employment shifts due to requirements of the act. This evaluation *is to include* investigations of threatened plant closures or reductions in employment allegedly due to requirements of the act or any actual closures or reductions which are alleged to have occurred because of such requirements." H.R. REP. NO. 95-294, at 317 (1977) (emphasis added).

The EPA argues that the provision is discretionary inasmuch as it contains no "date-certain deadline," citing *inter alia*, **Sierra Club v. Thomas**, 828 F.2d 783, 791 (D.C. Cir. 1987) and **Maine v. Thomas**, 874 F.2d 883, 888 (1st Cir. 1989).

Whether a "date-certain deadline" is necessary to find a non-discretionary duty is open to some questions. As Judge Sanders noted in **Cross Timbers Concerned Citizens v. Saginaw**, 991 F.Supp. 563 (N.D. Tex. 1997):

> Defendants claim that absent a "date-certain" deadline for an agency obligation under the CWA, the duty is purely discretionary. *See* **Sierra Club v. Thomas**, 828 F.2d 783, 791 (D.C. Cir. 1987) ("In order to impose a clear-cut nondiscretionary duty, we believe that a duty of timeliness must categorically mandat[e] that all specified action be taken by a date-certain deadline."). In **Sierra Club v. Thomas**, the D.C. Circuit interpreted the Clean Air Act to decide that congressional intent limits citizen suits to those in which the court is able to determine readily whether a violation occurred. *See id.*

at 791. In the absence of an ascertainable deadline, the D.C. Circuit reasoned, it may be impossible to conclude that Congress accords an action such high priority as to impose upon the agency a "categorical mandate" that deprives it of all discretion over the timing of its work. *Id.* Defendants belabor, but quite accurately, that Plaintiff's claim is not related to any duty for which the CWA provides a date-certain deadline.

The Court is inclined to reject Defendants' broad reading of the D.C. Circuit's opinion in ***Sierra Club v. Thomas***. The D.C. Circuit itself has indicated that the question remains open whether a date-certain deadline is required for a mandatory EPA duty to arise under the Clean Water Act. *See* ***National Wildlife Federation v. Browner****,* 127 F.3d 1126, 1128 (D.C. Cir. 1997) (declining to decide "whether, as EPA contends, a 'readily ascertainable deadline' for agency action is a necessary jurisdictional basis for a citizen suit under the [Clean Water] Act"). Furthermore, other courts have examined the issue of CWA mandatory duty without referring to a date-related test. *See, e.g.,* ***Browner****,* 127 F.3d at 1128; ***Miccosukee Tribe of Indians v. USEPA****,* 105 F.3d 599, 602 (11th Cir. 1997) (and cases cited therein). Finally, this Circuit's relevant jurisprudence, though it pre-dates ***Sierra Club v. Thomas****,* examines the question from a different standpoint of analysis. *See, e.g.,* ***Sierra Club v. Train****,* 557 F.2d at 491.

991 F.Supp. at 568.

In ***Sierra Club v. Johnson***, 2009 WL 2413094, *3 (N.D. Cal. Aug. 5, 2009), the

court refused to adopt a bright line rule that only duties with date-certain deadlines are nondiscretionary.

This Court does not find the lack of a "date-certain deadline" to be fatal to the plaintiffs' case. The statute states that the "Administrator shall conduct continuing evaluations . . .." While the EPA may have discretion as to the timing of such evaluations, it does not have the discretion to categorically refuse to conduct **any** such evaluations, which is the allegation of the plaintiffs.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Supreme Court found that a provision of the Endangered Species Act stating that: "The Secretary *shall* designate critical habitat, and make revisions thereto, ... on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat" was language "of obligation rather than discretion." 520 U.S. at 172 (Emphasis by Supreme Court).

The Court held that "the fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical *requirement* that, in arriving at his decision, he 'tak[e] into consideration the economic impact, and any other relevant impact,' and use 'the best scientific data available.' *Ibid.* It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking. See *SEC v. Chenery Corp.,* 318 U.S. 80, 94–95 (1943)." *Id.* (Emphasis by Supreme Court).

This Court finds that, at this stage of the proceedings, the plaintiff's allegations are sufficient to provide this Court with the jurisdiction to hear this case under § 304 of the

Clean Air Act. The EPA's motion to dismiss for lack of jurisdiction shall be denied.

The defendant also seeks to have this Court strike the plaintiffs' prayer for injunctive relief. "The standard upon which a motion to strike is measured places a substantial burden on the moving party. 'A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted.' ***Clark v. Milam,*** 152 F.R.D. 66, 70 (S.D. W.Va. 1993). Generally, such motions are denied 'unless the allegations attacked have no possible relation to the controversy and may prejudice the other party.' ***Steuart Inv. Co. v. Bauer Dredging Constr. Co.,*** 323 F.Supp. 907, 909 (D. Md. 1971). ***Fanase v. Liberty Life Assurance Co. of Boston***, 2011 WL 1706531 (N.D. W.Va. May 5, 2011) (Stamp, J.).

Similarly, in ***Mayne-Harrison v. Dolgencorp, Inc.***, 2010 WL 3717604 (N.D. W.Va. Sept. 17, 2010) (Bailey, J.), this Court held that "[p]ursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a court may 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' Fed.R.Civ.R. 12(f). '[M]otions under 12(f) are viewed with disfavor by the federal courts and are infrequently granted,' and are only granted with the challenged pleading has 'no possible relation or logical connection to the subject matter of the controversy' or 'cause some form of significant prejudice to one or more parties to the action.' 5C Charles A. Wright & Arthur Miller, **Federal Practice & Procedure** §§ 1380.1382 (West 2009); see also ***Waste Mgmt. Holdings, Inc. v. Gilmore***, 252 F.3d 316, 347 (4th Cir. 2001).

It is clear that this Court has the authority to grant injunctive relief in this case. The statute provides that "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to order the Administrator to

14

perform such act or duty, as the case may be. . .." See **Environmental Defense Fund v. Thomas**, 870 F.2d 892 (2d Cir. 1989).

While there may exist some question as to scope of the injunctive relief which may be awarded by this Court, such a question does not satisfy the standard applicable to a motion to strike. The argument as to the scope of relief is simply premature at this point in the proceedings. Accordingly, the motion to strike will be denied.

For the reasons stated above, Defendant's Motion to Dismiss the Complaint and Motion to Strike Prayer for Injunctive Relief [**Doc. 34**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** September 16, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE