IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**MURRAY ENERGY CORPORATION,
MURRAY AMERICAN ENERGY, INC.,
THE AMERICAN COAL COMPANY,
AMERICAN ENERGY CORPORATION,
THE HARRISON COUNTY COAL COMPANY,
KENAMERICAN RESOURCES, INC., THE
MARION COUNTY COAL COMPANY, THE
MARSHALL COUNTY COAL COMPANY,
THE MONONGALIA COUNTY COAL
COMPANY, OHIOAMERICAN ENERGY
INC., THE OHIO COUNTY COAL COMPANY,
and UTAHAMERICAN ENERGY, INC.,**

        Plaintiffs,

        v.                               **Civil Action No. 5:14-CV-39**
                                                           Judge Bailey

**GINA McCARTHY**, Administrator,
United States Environmental Protection
Agency, in her official capacity,

        Defendant.

## MEMORANDUM ORDER DENYING MOTION TO DISMISS AND MOTION TO STAY DISCOVERY

Pending before this Court are The United States' Motion to Dismiss Due to Lack of Article III Standing, filed by the EPA on December 23, 2014 [Doc. 59] and the Motion of the United States to Stay Discovery Pending Resolution of Dispositive Motion and Request for Expedited Proceeding, filed by the EPA on the same date [Doc. 61]. With respect to the Motion to Dismiss, the plaintiffs filed their Plaintiffs' Response in Opposition to Defendant's Second Motion to Dismiss on January 23, 2015 [Doc. 65], and the EPA filed its United

1

States' Reply in Support of Motion to Dismiss due to Lack of Article III Standing on February 17, 2015 [Doc. 70]. With respect to the Motion to Stay, the plaintiffs filed their Plaintiffs' Opposition to Defendant's Motion to Stay Discovery on December 31, 2014 [Doc. 62], and the EPA filed the United States' Reply in Support of Motion to Stay Discovery on January 9, 2015 [Doc. 64]. Both Motions are ripe for decision and, for the reasons stated below, will be denied.

## **Background**

This civil action was filed on March 24, 2014, by Murray Energy Corporation and a number of its subsidiary or affiliated companies[1] (hereinafter collectively "Murray") seeking declaratory and injunctive relief for the EPA's alleged failure to perform its duties required under 42 U.S.C. § 7621, which requires the EPA to "conduct continuing evaluations of potential loss or shifts of employment which may result from the administration or enforcement of the provision of [the Clean Air Act] and applicable implementation plans, including where appropriate, investigating threatened plant closures or reductions in employment allegedly resulting from such administration or enforcement."

The plaintiffs contend that the EPA's enforcement of the Clean Air Act, combined with the EPA's refusal "to evaluate the impact that its actions are having on the American coal industry and the hundreds of thousands of people it directly or indirectly employs" is irreparably harming the plaintiffs [Amended Complaint, Doc. 31, p. 2].

The plaintiffs filed their Amended Complaint on May 23, 2014 [Doc. 31]. After the

---

[1] According to the Amended Complaint, the plaintiffs collectively employ over 7,200 and comprise the largest underground coal mining operations in the United States [Doc. 31, ¶ 76].

2

grant of an extension of time, the EPA filed its Defendant's Motion to Dismiss the Complaint and Motion to Strike Prayer for Injunctive Relief [Doc. 34] on June 30, 2014, asserting that this Court lacked subject matter jurisdiction to hear the case. The plaintiffs filed their Memorandum in Opposition to Defendant's Motion to Dismiss the Complaint and Motion to Strike Prayer for Injunctive Relief [Doc. 38] on July 25, 2014, and the EPA filed its Reply Memorandum in Support of Defendant's Motion to Dismiss the Complaint and Motion to Strike Prayer for Injunctive Relief [Doc. 39] on August 11, 2014.

By Order entered September 16, 2014 [Doc. 40], this Court denied the Motion and found, as a matter of law, that the EPA had a non-discretionary duty to undertake an ongoing evaluation of job losses and that this Court had and has subject matter jurisdiction to hear the case.

On October 9, 2014, the EPA filed its United States' Motion to Clarify the Court's September 16, 2014 Order [Doc. 50]. On October 14, 2014, the plaintiffs filed their Memorandum in Opposition to Defendant's Motion to Clarify [Doc. 51], and on October 17, 2014, the defendant filed its Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Clarify [Doc. 52].

By Order entered October 24, 2014, this Court denied the Motion to Clarify [Doc. 53].

On December 23, 2014, the defendant filed the pending The United States' Motion to Dismiss Due to Lack of Article III Standing [Doc. 59][2], as well as its Motion of the United

---

[2] This Court is unclear why this Motion was not filed in conjunction with the prior Motion to Dismiss for lack of jurisdiction. However, the issue is not waivable, since a Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." **West Virginia Highlands Conservancy v. Johnson**, 540 F.Supp.2d 125, 133

3

States to Stay Discovery Pending Resolution of Dispositive Motion and Request for Expedited Proceeding [Doc. 61]. On December 31, 2014, the plaintiffs filed their Plaintiffs' Opposition to Defendant's Motion to Stay Discovery [Doc. 62]. On January 9, 2015, the EPA filed its United States' Response in Support of Motion to Stay Discovery [Doc. 64]. On January 23, 2015, the plaintiffs filed Plaintiff's Response in Opposition to Defendant's Second Motion to Dismiss [Doc. 65]. Finally, on February 17, 2015, the EPA filed United States' Reply in Support of Motion to Dismiss Due to Lack of Article III Standing.

## Discussion

The Court in **Mut. Funds Inv. Litig. v. AMVESCAP PLC**, 529 F.3d 207 (4th Cir. 2008), spoke to the issue of Article III standing: "Article III standing is a fundamental, jurisdictional requirement that defines and limits a court's power to resolve cases or controversies ... and 'the irreducible constitutional minimum of standing' consists of injury-in-fact, causation, and redressability." (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

The doctrine of standing requires federal courts to satisfy themselves that "the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." **Summers v. Earth Island Inst.**, 555 U.S. 488, 493 (2009), quoting **Warth v. Seldin**, 422 U.S. 490, 498–499 (1975).

As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." **Raines v. Byrd**, 521 U.S. 811,

---

(D.D.C. 2008), quoting **Grand Lodge of FOP v. Ashcroft**, 185 F.Supp.2d 9, 13 (D.D.C. 2001). See **Sasser v. EPA**, 990 F.2d 127, 129 (4th Cir. 1993).

4

818 (1997). "Article III standing ... enforces the Constitution's case-or-controversy requirement." ***Elk Grove Unified Sch. Dist. v. Newdow,*** 542 U.S. 1, 11 (2004).

As the party invoking federal jurisdiction, the plaintiffs bear the burden of establishing standing. ***Lujan v. Defenders of Wildlife,*** 504 U.S. 555, 561 (1992). If plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction. ***Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care,*** 433 F.3d 181, 198 (2nd Cir. 2005). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." ***Steel Co. v. Citizens for a Better Env't,*** 523 U.S. 83, 94 (1998) (citations omitted).

"To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." ***Summers v. Earth Island Inst.***, 555 U.S. 488, 493 (2009), quoting ***Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*** 528 U.S. 167, 180–181 (2000). See also ***Beyond Systems, Inc. v. Kraft Foods, Inc.***, 777 F.3d 712 (4th Cir. 2015). "This requirement assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.'" ***Id.***, quoting ***Schlesinger v. Reservists Comm. to Stop the War,*** 418 U.S. 208, 221 (1974). "Where that need does not exist, allowing courts to oversee legislative or executive action 'would significantly alter the allocation of power ... away from a democratic form of government,'" ***United States v.***

*Richardson,* 418 U.S. 166, 188 (1974) (Powell, J., concurring).

Turning to the application of the law to the facts of this case, the Court must attempt to capsulize the plaintiffs' cause of action. In their Amended Complaint [Doc. 31], the plaintiffs allege:

1. That the plaintiffs combined employ over 7,200 workers and comprise the largest underground coal mining operations in the United States;

2. That the financial livelihood of the plaintiffs is dependent upon a continuing domestic market for coal;

3. That the actions of the EPA have caused a reduced market for coal, which threatens the economic viability of the plaintiffs;

4. That the EPA has failed to comply with the requirement under 18 U.S.C. § 7621, which requires the EPA to "conduct continuing evaluations of potential loss or shifts of employment which may result from the administration or enforcement of the provision of [the Clean Air Act] and applicable implementation plans, including where appropriate, investigating threatened plant closures or reductions in employment allegedly resulting from such administration or enforcement;"

5. That if the EPA were to comply with the requirements of 18 U.S.C. § 7621, the information would document the threatened business closures and consequent unemployment, which could be used to convince the EPA, the Congress, and/or the American public that the actions of the EPA have been harmful and must be changed.

In arguing that the plaintiffs lack standing, the EPA has raised the following:

1. The allegation of a reduced market for coal is not fairly traceable to EPA's failure to conduct employment evaluations;

2. The allegations of a reduced market for coal cannot be redressed by a favorable decision by this Court;

3. The plaintiffs' alleged injuries are not sufficient to establish standing;

4. Plaintiffs fail to establish standing based upon informational injury because 18 U.S.C. § 7621 neither creates a right to information nor implicates fundamental rights;

5. Plaintiffs have failed to allege a concrete, redressable injury caused by the lack of employment evaluations;

6. Plaintiffs do not have procedural standing because § 7621 is not a procedural requisite to any EPA action; and

7. Plaintiffs do not have procedural standing because § 7621 was not designed to protect their interests.

For the reasons stated below, this Court finds that the plaintiffs have established standing to proceed with this action. This Court is aware that "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." **Summers v. Earth Island Inst.**, 555 U.S. 488, 493-94 (2009) (quoting **Lujan v. Defenders of Wildlife,** 504 U .S. 555, 562 (1992)).

The fact that the failure to perform employment evaluations may affect a large number of persons or entities is not fatal to the plaintiffs' standing. "At bottom, 'the gist of the question of standing' is whether petitioners have 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.' **Baker v. Carr,** 369

U.S. 186, 204 (1962). As Justice Kennedy explained in his *Lujan* concurrence:

> While it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way. This requirement is not just an empty formality. It preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed to professed, stake in the outcome, and that the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." 504 U.S. at 581 (internal quotation marks omitted)."

*Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007).

In *White Oak Realty, LLC v. U.S. Army Corps of Eng'rs*, 2014 WL 4387317 (E.D. La. September 4, 2014), the Court noted that "economic injury from business competition created as an indirect consequence of agency action can serve as the required 'injury in fact,'" citing *Envtl. Defense Fund v. Marsh*, 651 F.2d 983, 1003 (5th Cir. 1981), and that "a company's interest in marketing its product free from competition" is a "legally cognizable injur[y]" for purposes of Article III standing, citing *Lujan*, 504 U.S. at 578.

Based upon the foregoing authority, this Courts finds that the plaintiffs have alleged a sufficient concrete and particularized injury in fact.

In *Bennett v. Spear*, 520 U.S. 154 (1997), the Court rejected an argument by the Government that the fairly traceable requirement is satisfied only by a proximate cause

8

analysis. The **Bennett** Court stated that "[t]his wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation. While, as we have said, it does not suffice if the injury complained of is 'th[e] result [of] the *independent* action of some third party not before the court,' **Defenders of Wildlife**, supra, at 560–561 (emphasis added) (quoting **Simon v. Eastern Ky. Welfare Rights Organization**, 426 U.S. 26, 41–42 (1976)), that does not exclude injury produced by determinative or coercive effect upon the action of someone else." 520 U.S. at 168-69.

Similarly, in **Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC**, 713 F.3d 187, 195 (4th Cir. 2013), the Fourth Circuit stated "OpenBand's mistake, in other words, is to 'equate[ ] injury "fairly traceable" to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation.' **Bennett v. Spear**, 520 U.S. 154, 168–69 (1997). But as the Supreme Court has explained, the causation element of standing is satisfied not just where the defendant's conduct is the last link in the causal chain leading to an injury, but also where the plaintiff suffers an injury that is 'produced by [the] determinative or coercive effect' of the defendant's conduct 'upon the action of someone else.' *Id.* at 169." 713 F.3d at 197.

In **Competitive Enterprise Inst. v. NHTSA**, 901 F.2d 107 (D.C. Cir. 1990), the District of Columbia Circuit stated:

> To satisfy the causation and redressability requirements, Consumer Alert must show that its members' restricted opportunity to purchase larger passenger vehicles is fairly traceable to the CAFE standard as set by NHTSA

9

and is likely to be ameliorated by a judicial ruling directing the agency to take further account of safety concerns.

We note at the outset that the standing determination must not be confused with our assessment of whether the party could succeed on the merits.  See **Women's Equity Action League v. Cavazos**, 879 F.2d 880 (D.C. Cir. 1989);  **Public Citizen v. Federal Trade Comm'n**, 869 F.2d 1541, 1549 (D.C. Cir. 1989).  For standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test.  **Duke Power Co. v. Carolina Environmental Study Group**, 438 U.S. 59, 75 n. 20 (1978); see also **Autolog Corp. v. Regan**, 731 F.2d 25, 31 (D.C. Cir. 1984).  This is true even in cases where the injury hinges on the reactions of third parties, here the auto manufacturers, to the agency's conduct.  See **National Wildlife Federation v. Hodel**, 839 F.2d 694, 705 (D.C. Cir. 1988).  In such cases, the alleged injury must be traced back through the actions of the intermediary parties to the challenged government decision.  See **Public Citizen**, 869 F.2d at 1547 n. 9.  This case falls well within the range of those cases in which the government's action has been found substantially likely to cause the petitioners' injury despite the presence of intermediary parties.  See **National Wildlife Federation**, 839 F.2d at 706–16 (environmental organization had standing where challenged mining regulations, as interpreted and applied by the states and mining industry, could cause injury

to its members' use and enjoyment of the environment); ***Community Nutrition v. Block****,* 698 F.2d 1239, 1248 (D.C. Cir. 1983), *rev'd on other grounds,* 467 U.S. 340 (1984) (within complex structure of dairy market, consumers' contention that if milk handlers were not required to make a compensatory payment they would pass the savings on to consumers was reasonable).

901 F.2d at 113-14.

In this case, the plaintiffs have alleged that the actions of the EPA have had a coercive effect on the power generating industry, essentially forcing them to discontinue the use of coal. This Court finds these allegations sufficient to show that the injuries claimed by the plaintiffs are fairly traceable to the actions of the EPA. While the EPA argues that such would only be traceable to the earlier actions of the EPA rather than the failure of the EPA to conduct employment evaluations, this Court cannot agree. The claimed injuries, while in part traceable to the prior actions of the EPA, may also be fairly traceable to the failure of the EPA to conduct the evaluations. Congress' purpose in enacting the requirement for the evaluations was to provide information which could lead the EPA or Congress to amend the prior EPA actions.

This Court also finds that the injuries are redressable. If this Court were to grant the requested injunctive relief to require the EPA to perform its duty under 18 U.S.C. § 7621, the results of the inquiry may have the effect of convincing the EPA, Congress, and/or the American public to relax or alter EPA's prior decisions.

Finally, this Court finds that the plaintiffs fall within the zone of interests protected

by the statute.  One purpose of 18 U.S.C. § 7621 is to protect industries, employers and employees from the untoward effects of prior EPA actions.  As such employers, the plaintiffs clearly fall within that zone.  See *Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 963 (4th Cir. 1984).

The plaintiffs also assert procedural and informational injury as a basis for their standing.  The procedural standing argument is premised upon the fact that the EPA has failed to conduct the employment evaluations.  It is clear that an individual can enforce procedural rights, provided that the procedures sought to be enforced are designed to protect his interest.  *Lujan*, 504 U.S. at 573 n. 8.

"There is this much truth to the assertion that 'procedural rights' are special:  The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.  Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." *Id.* n. 7.

In *Massachusetts v. EPA*, 549 U.S. 497 (2007), the Supreme Court stated that "a litigant to whom Congress has accorded a procedural right to protect his concrete interests, —here, the right to challenge agency action unlawfully withheld—can assert that right without meeting all the normal standards for redressability and immediacy.  When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that

12

the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant. [*Lujan*, at 560-61], *see also* ***Sugar Cane Growers Cooperative of Fla. v. Veneman,*** 289 F.3d 89, 94–95 (D.C. Cir. 2002) ('A [litigant] who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result'). 549 U.S. at 517-18 (interior citations omitted). *See also* ***Pye v. United States***, 269 F.3d 459, 471 (4th Cir. 2001) (where the plaintiffs validly assert a procedural injury, they need not meet the normal standards for redressability and immediacy).

> "The requirements for standing differ where, as here, plaintiffs seek to enforce procedural (rather than substantive) rights. When plaintiffs challenge an action taken without required procedural safeguards, they must establish the agency action threatens their concrete interest. ***Fla. Audubon Soc'y*** [***v. Bentsen***], 94 F.3d [658] at 664 [D.C. Cir. 1996]. It is not enough to assert 'a mere general interest in the alleged procedural violation common to all members of the public.' *Id.* Once that threshold is satisfied, the normal standards for immediacy and redressability are relaxed. *Lujan,* 504 U.S. at 572 n. 7. Plaintiffs need not demonstrate that but for the procedural violation the agency action would have been different. ***Ctr. for Law & Educ. v. Dep't of Educ.,*** 396 F.3d 1152, 1160 (D.C. Cir. 2005). Nor need they establish that correcting the procedural violation would necessarily alter the final effect of the agency's action on the plaintiffs' interest. *Id.* Rather, if the plaintiffs can

13

'demonstrate a causal relationship between the final agency action and the alleged injuries,' the court will 'assume[ ] the causal relationship between the procedural defect and the final agency action.' *Id*."

*Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014).

With regard to redressability, the District of Columbia Circuit has recently stated that:

> Plaintiffs asserting a procedural rights challenge need not show the agency action would have been different had it been consummated in a procedurally valid manner—the courts will assume this portion of the causal link. ***Ctr. for Law & Educ.,*** 396 F.3d at 1160. Rather, plaintiffs simply need to show the agency action affects their concrete interests in a personal way. In other words, the intervenors' argument that the agency action was lawful or correct on the merits—and therefore that it did not injure the plaintiffs—is substantially the same as arguing the omitted procedure would not have affected the agency's decision. This is precisely the argument a defendant *cannot* make in a procedural rights challenge. Cf. ***Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*** 528 U.S. 167, 181 (2000) ("The relevant showing for purposes of Article III standing ... is not injury to the environment but injury to the plaintiff. To insist upon the former rather than the latter as part of the standing inquiry ... is to raise the standing hurdle higher than the necessary showing for success on the merits in an action alleging noncompliance with a[ ] [discharge] permit.").

*Mendoza*, 754 F.3d at 1012-13.

In ***West Virginia Assoc. of Community Health Centers, Inc. v. Heckler***, 734 F.2d 1570 (D.C. Cir. 1984), the District of Columbia Circuit found that the plaintiffs had standing to challenge DHHR's determination of the amount of funding to be allocated to West Virginia. The Court found redressability in the fact that the providers were denied the ability to compete for funding. The Court stated:

> To invoke federal jurisdiction, a party must show at a minimum that the challenged actions have caused it injury that is likely to be redressed by a favorable judicial decision. ***Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.***, 454 U.S. 464, 472 (1982). The Secretary argues that appellants have not satisfied these requirements, inasmuch as they have failed to demonstrate that a judicial decision mandating an increase in West Virginia's PCBG funding would redound to their benefit. In this regard, the Secretary relies principally upon the fact that West Virginia would have complete discretion to award any additional funding it might receive to other CHC's within the State which are not parties to this lawsuit. In response to this line of reasoning, appellants argue that they have been injured by being denied an opportunity to compete for this increased funding, and that to have standing they need not demonstrate that they would actually receive the additional funding. Our examination of applicable law mandates the conclusion that appellants do indeed have standing to sue.

734 F.2d at 1574 (footnotes omitted).

The rule is the same in the Fourth Circuit. "We note that the plaintiffs need not show that the result of the agency's deliberations will be different if the statutory procedure is followed," **Pye**, *supra* at 472, citing **Federal Election Com'n. v. Akins,** 524 U.S. 11, 25 (1998).

The EPA argues that in order to support procedural standing, the procedure violated must be a prerequisite to a final agency action. While many, if not all, of the cases cited by plaintiffs involve procedures which preceded an agency action, this Court has not found a case which so limits the doctrine. Indeed, had the plaintiffs been denied a right to appeal a final agency action, could the EPA seriously deny that there was a procedural violation? The procedure mandated by 18 U.S.C. § 7621 is designed to prompt a second look at final agency action when one can calculate the damage (or lack thereof) to employment and the economy. The denial of the benefit of the evaluations required by 18 U.S.C. § 7621 is sufficient to support procedural standing.

As noted above, the plaintiffs also assert informational standing. "The Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute, notwithstanding '[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure.' **Pub. Citizen v. U.S. Dep't of Justice,** 491 U.S. 440, 449–50 (1989); *see also* **Akins,** 524 U.S. at 21–25 (holding that a group of voters had a concrete injury based upon their inability to receive certain donor and campaign-related information from an organization); **Havens Realty Corp. v. Coleman,** 455 U.S. 363, 373–74 (1982) (concluding that deprivation of information about housing availability was sufficient to

constitute an Article III injury). What each of these cases has in common is that the plaintiffs (1) alleged a right of disclosure; (2) petitioned for access to the concealed information; and (3) were denied the material that they claimed a right to obtain. Their informational interests, though shared by a large segment of the citizenry, became sufficiently concrete to confer Article III standing when they sought and were denied access to the information that they claimed a right to inspect.

This Court finds that the plaintiffs have also established standing under the informational doctrine. The statute requires the EPA to gather certain information and conduct evaluations, which it has refused to do. The plaintiffs may be entitled to the information which has not been collected or analyzed and have requested the same. This is sufficient to support standing.

This Court is unpersuaded by the EPA's argument that had the EPA conducted the employment evaluations, the plaintiffs would not be entitled to the information. The EPA fails to point out any theory by which this information could be secreted from the plaintiffs or any other person. We do not live in a secret society, and the plaintiffs would have the ability to receive the information through the Freedom of Information Act, if not through other means.

For the reasons stated above, this Court finds that the plaintiffs have the requisite standing to proceed with this action. Accordingly, The United States' Motion to Dismiss Due to Lack of Article III Standing, filed by the EPA on December 23, 2014 **[Doc. 59**] is **DENIED**, and the Motion of the United States to Stay Discovery Pending Resolution of Dispositive Motion and Request for Expedited Proceeding, filed by the EPA on the same

date **[Doc. 61]** is **DENIED AS MOOT**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** March 27, 2015.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE